is Tyler v. Department of Education, number 17-6074. Counsel? Good morning. May it please the Court. I'd like to reserve about seven minutes in rebuttal on this particular case, if I may. Well, we'll see. You're the manager of your time. All right. My name is Peter Huntley. I know our questions may make it a little difficult, but go ahead. That's why I said I'd like to. I understand. Good point. My name is Peter Nolan, and I represent the Oklahoma Department of Rehabilitative Services, which I'll refer to as ODRS because I only have 15 minutes. ODRS helps blind people find employment, managing food service companies on federal property. And I think it's important for this whole case to realize ODRS does not profit from these enterprises. And the gist of my argument in the beginning is it retains its sovereign immunity while providing this help to blind people. Well, that prompts my first question to you, and that is apart from your sovereign immunity arguments. We'll get into those. Have you argued whether the act, the Randolph-Shepard Act, provides that an arbitration panel has authority under the statute to award damages and attorney's fees? We have argued that they do not have the authority. Well, I've been looking for that. Where did you argue that? It seems to me your argument's been primarily a sovereign immunity argument. But my question is whether the statute, or even get the sovereign immunity, did you argue that the statute doesn't allow it? Well, our argument is two-part. One, Congress hasn't abrogated that authority by putting in the act that Oklahoma doesn't have it. And two, Oklahoma hasn't waived its sovereign immunity. No, no, I didn't ask you about sovereign immunity. I'm sorry. I asked you about whether the act allows an award of damages, even before you get the sovereign immunity. Have you made that argument or not? I believe we've made that argument. I believe in there we say that nowhere in the act does it mention award of damages. But why would that foreclose relief? I mean, I'm looking for that argument. I wonder if it's there. I believe it's there, Your Honor. Should I articulate it? Well, I don't know about articulating it. If it's not there, then we can't reach it. So I'm asking if it's there. I believe it's there, yes. Our argument is that the act doesn't, by its language, even address damages. And therefore, it cannot be said under the Sosoman case, which we cite, that Oklahoma has waived sovereign immunity. So they're tied together. In other words, part of the reason they cannot be said to have waived sovereign immunity is that the act doesn't articulate that if you want to help blind people, you have to waive your sovereign immunity. So those two arguments are tied together in that regard. That's why they haven't waived it. If the act had said, if you're going to have an arbitration, that arbitration panel can award monetary damages or attorney's fees. And Oklahoma had then willingly and knowingly accepted that, then that would obviously destroy our argument about waivers. So the two concepts are tied together. But that's how we addressed it in that regard, Your Honor. I want to start off by saying I think there's an argument in Apelli's brief that sovereign immunity doesn't apply to Article I proceedings. And I don't think I need to give that much thought, but obviously it does apply to Article I proceedings. And we cite the Wisconsin case, which I think the United States Supreme Court case to that effect. Well, I'm not sure how obvious this is. I mean, is the arbitration panel really the same thing as an agency adjudication like the federal maritime proceeding? Yes. We don't have a, there's no LJ. We have this selection for the arbitration panel that brings in people from various situations. Why should that proceeding qualify for sovereign immunity under federal maritime? Well, I think what you said actually argues why it should qualify. The cases which I've read which say why sovereign immunity does apply to administrative proceedings is because administrative proceedings were not around when the Constitution was written. And the courts could not imagine that if states were protected in federal court from having to pay federal damages, why they wouldn't be protected in an administrative proceeding. And under that reasoning, they can't have imagined why this arbitration panel, which we do say is a final and imputable decision under the APA and therefore analogous to a decision by. Well, you know, the briefs don't really get into the federal maritime analysis much at all. But in federal maritime, the Supreme Court did a fairly detailed comparison of the administrative proceeding there with what happens in judicial proceedings. It ended up saying that they're sufficiently similar to, you know, it was a 5-4 decision. It was a close decision. And one of the considerations is that in the administrative proceeding, there was an administrative law judge. We don't have that here. Well, in this proceeding, you had three. And you didn't give us that analysis in your briefing. In this proceeding, you had three attorneys picked by the parties. And as you can tell from the record, you had all of the rules of procedure. It was held. It went through the maritime. I mean, the facts of this fit the facts of federal maritime. You had the rules of procedure. You called the witnesses. You had subject to the same rules of procedure you would have in a federal district court. So it had all of the trappings that were there in federal time. We didn't go through that analysis. And frankly, that's my fault, because it seemed that the facts of this are exactly the facts of an administrative hearing. I don't have a judge. Pardon? You don't have a judge, and it's an arbitration. You have a three-judge panel. It would be like saying, I don't have a judge here. I have three judges. I have about three times the power of one judge, three times the thought of that. So we had three judges, not just one judge. Well, they aren't called judges. Pardon? They're arbitrators. They're called arbitrators. They're not called judges. That's true. But it was a judicial proceeding in every respect. Okay. And as we discussed earlier, the Randolph-Shepard Act does not say anything about the award of monetary damage. It doesn't say anything about what remedies the arbitration panel can award. It says a little bit. In that, it says what a blind manager can complain about. He can complain about the administration, anything about the administration of the act, which he doesn't like, which the state licensing agency has done. And in that regard, it's like that Sosoman case. Well, so are you – where do you draw the line? What does the act allow the arbitration panel to do in terms of a remedy when a vendor complains? Just as in Sosoman, just as the Fifth Circuit found, it allows for a declaration of what the violation is and injunctive-type relief saying you must, as in this case, take the contract away from one person and give it to another. Now, we don't agree that it allows that, but it allows for declaratory relief and injunctive relief. It does not allow for damages. But it also doesn't allow – you said we don't agree with that. So they can say the procedure was – is null and void and you've got to do it again. Exactly, Your Honor. But they can't say you have to remove Mr. Brown and give the contract to Mr. Alcott. Yes, Your Honor. And I thought about that, and I thought what I should have done and I did not do is cite you to all those Court of Claims cases which say it is undisputable that the ultimate grant of a contract must be left to the discretion of the government agency. The courts will not make contracts for the parties. And the reason that came to me is I've been recently in some cases before there, with his exact type of argument, and that's citing to the Scanwell Laboratories v. Schaeffer, which I'll give to the Court after this. But when parties come in and say, hey, the government picked the wrong bidder, that comes to the Court of Claims all the time. The Court of Claims goes, yeah, we agree. Pick the wrong bidder or something was wrong with your process. The remedy is go back. Let me tell you what you did wrong. That's the declaratory. And then the injunction is your selection is not any good. Go back and do it right. And that's what the remedy should be in this case is go back and do it correctly based upon the guidance that we've given you or the arbitration panel has given to you as to what you did wrong the first time. It is not we're going to select a person to run this contract. Courts normally don't do that. They don't get in the way of the government agency selecting who will be the contractor on a project. So let me just make sure I understood what you just said. If, for example, Mr. Brown was ineligible because he was, say, delinquent on the taxes, let's just assume that. And I know you don't agree with it, but let's assume that. Then it was permissible for the arbitration panel to make that determination and to say he's got to be out. And so I take it under that scenario, your argument would be the panel had to stop there. It couldn't put Mr. Allstat in. It couldn't substitute in or install Mr. Allstat. It could not make the contract. That is right, Your Honor. That seems to be the law, as clearly as the law ever is, is that courts don't make contracts. Well, if the law is clear, is it in your brief that it's clear? I wasn't sure I saw a case that said that in your brief. And that's why I brought up the Scanwell case now, which I'll submit. But we did argue that they don't have the power to substitute. Well, I know you argued that, but you need to support it. Yes, Your Honor. And then I'm going to submit that case to support that very point. And I think in answer to a question that was asked earlier, in Sosoman, the Fifth Circuit actually talked about granting declaratory and injunctive relief. And specifically in Sosoman, the Fifth Circuit specifically and the Supreme Court specifically said, look, just because you agree under this act that was in Sosoman that you will have a case in federal court, and just because you agree that that court can grant declaratory and injunctive relief, that doesn't mean that you have waived immunity. That is an incredibly stringent, strict test to do that. And the Religious Act in Sosoman didn't meet that. And as you've pointed out today, the Randolph-Shepard Act doesn't even attempt to meet that. And if I could reserve the remaining of my time. Thank you, Counselor. Thank you. Thank you. Good morning. I'm Kevin Donaldson on behalf of the licensed mine vendor, David Allstat. The United States Government and I have agreed that I will use 14 minutes of our time, and then if you have any questions of the United States Government, Ms. Sewell is here to answer those questions if that's permissible. May it please the Court. This case, and I think it becomes clear when you listen to the State of Oklahoma. The State of Oklahoma administers this act for the protection of licensed mine vendors. And at the bottom of most federal courthouses, there's a cantina where a licensed mine vendor is stationed down there. And what the State of Oklahoma is doing here is the State of Oklahoma wants to swim, but they don't want to get wet. They want their cake and eat it too. The problem is they want to administer this act. They've been administering this act since the 1940s. They've taken millions and millions of dollars, and yet when they get caught with their hand in the cookie jar and they don't do what they are supposed to do in administering this act, they say, King's X, this Randolph Shepard Act, and this deal about the arbitration doesn't mean anything. It only means something when we win. If the licensed mine vendor wins... Counsel, let's get to what the act means. Most of Mr. Nolan's argument has been about what relief the act permits. And why don't you pick it up there? What relief does the Randolph Shepard Act permit an arbitration panel to award? Well, Your Honor, the act doesn't specifically detail all of the... It provides for an appropriate remedy. Okay, if it is as the State of Oklahoma would have this court believe, then there is no remedy that can ever be given to a licensed mine vendor. And in this particular case... Well, but Mr. Nolan, again, he can correct this, Honored Bo, if he wishes, but he seemed to say that the arbitration panel could, if there's a basis for it, declare that Mr. Brown was not eligible for the contract. And indeed they did. Well, then that's a form of relief. Indeed, the State of Oklahoma then ignored the arbitration panel and went to the district court, the Western District of Oklahoma, and Mr. Allstat, instead of being placed in the position that he was supposed to have been placed in, he has been five years down the road. Bear in mind... Right, and Counsel, here we are. But could the panel, did the panel have authority under the statute to put Mr. Allstat in the job to replace Mr. Brown? Absolutely, they did. And the State of Oklahoma ignored it. Well, what support do you have for the arbitration panel to have done that under the act? Well, the Ninth Circuit has found in the Primo v. Martin case that they absolutely had the power to give injunctive and monetary relief. The Sixth Circuit has found the same thing. Well, let's get a little more specific about injunctive relief. Do you have any case holding that an RSA, Randolph Separate Act, arbitration panel, can remove one vendor from the contract and put someone like Mr. Allstat in that person's place? Something a little more specific. If we just say injunctive relief, that only gets us so far. Well, they have the absolute authority, and you have to go back to that. Absolute authority. Because they are who has been chosen by an act of Congress to arbitrate these disputes between the state licensing agency and the license-buying vendor. The Department of Education, under the auspices of the Randolph Separate Act, is the final authority. If they have no authority, there's no reason for the act. Well, couldn't they have more limited authority? Your Honor, more limited authority would render the act meaningless. It would mean that the state of Oklahoma can do exactly what it wants to do, which is exactly what it did in this case. Would you run into any constitutional problem if the act was interpreted to allow for an award of money damages, even though that's not explicitly in the language of the act, the Randolph Separate Act? No, Your Honor. So there's no sovereign immunity problem, no Eleventh Amendment problem, to award damages against a state when the statute itself doesn't explicitly allow that? The statute specifically allows for an arbitration to occur if the state is going to be the state licensing agency and they are bound to, it's administered by the Department of Education. Isn't the Supreme Court standard, I'm sorry, that it has to unequivocally express the right to award damages? Well, Your Honor, I think that the problem there is the Sussman case is a case where there was a private right of action with an Article III judge. This is a different case scenario. This is a statutory scheme set up where an arbitration panel was set up specifically to govern the state agency, the Department of Education, and the licensed blind vendor. And the implied right of action is there and it's different than the Sussman case and I think it's completely distinguishable from the Sussman case because of that fact. It's an arbitration panel. It's not an Article III judge. Well, but you're going to get to the Article III judge at some point if you want to enforce a damages award, right? Well, the Federal Arbitration Act. Well, now wait a minute. So the arbitration panel says damages for Mr. Allstaff, but you need to do something to recover those damages. You may have to go to federal court. Does a federal court, and didn't you counterclaim in federal court to get the damages in this case? I counterclaimed for confirmation of the arbitration award, which is allowed in the Federal Arbitration Act. All right, but in terms of getting the funds, the damages, why isn't there sovereign immunity for the ODRS in federal court if you seek to enforce the damages award? So now we're at Article III. Two things. One is if we go down the path that the state of Oklahoma wants to go down, it absolutely takes the heart and soul out of this act. Well, okay, but can we get back to the law? Let's just get back to the law. Why doesn't Sussman bar federal court from enforcing the damages award? Because it's under an arbitration award, and the Arbitration Act has been recognized. Sussman is a red herring. It's put out there. Okay, so you're relying on the Federal Arbitration Act. Is that correct? From the standpoint that that is how we ultimately are able to enforce our judgment. Now, our judgment should be enforceable simply by the fact that the Department of Education, through a three-arbitrator panel, awarded it. The state of Oklahoma wouldn't pay for it. More importantly, there's been some attempt at a distinction between retrospective damages and prospective damages. Well, if they put Mr. Allstat in at the time that the arbitration was complete, he wouldn't have had all the damages that he had, or has ended up having because they delayed, delayed, and delayed, and didn't want him to come in. You know, I realize, and I don't want to insult this panel, but, you know, in the Federal Register, where these cases are being decided all the time, and I can supplement, I think that we cited them in our brief, that there are published cases in the Federal Register for damages and attorney's fees are being awarded regularly under these Randolph-Sheppard cases. And it's important in the final analysis that these state agencies be held to this standard. And if they want to move or file a lawsuit that the Randolph-Sheppard Act and the arbitration provisions are unconstitutional because what has occurred, they're free to do so. But that wasn't raised here. It was not raised in the arbitration proceeding that the proceeding was unconstitutional and they knew from the very beginning that we were seeking damages and attorney's fees. And the only time that this argument has come up about the damages has been in the Tenth Circuit and the Federal District Court. They didn't raise it at the arbitration proceeding at all. They didn't raise the damages. Are you making a waiver argument? If there is sovereign immunity, they've waived it? Well, I think that's sort of what I'm hearing from you, but I want to make sure that I'm hearing it correctly. That isn't the sole argument that I have, Your Honor. I'm saying that if they really believe that, why didn't they raise it? They simply didn't raise it at the first initial stage. They didn't raise it in the two first hearings. You know, there were two fact-finding hearings that Mr. Hallstatt had to go to. And then those were appealed to the United States Department of Education, and we got three arbitrators who've been to the district court. We're now at the Tenth Circuit. If the state of Oklahoma is allowed to do whatever it wants and choose whomever it wants without any repercussions whatsoever, if that's what the law is, then we'll follow the law. I don't think that's what the law is. And I think three other circuits who have addressed this very issue have found that that's not the law. And the Department of Education is routinely publishing these cases under the Federal Register where that is not the law. And I submit to this court that that should not be the law in the Tenth Circuit. And the state of Oklahoma ought to be held to its responsibilities, considering the fact that it's getting $80 million a year from the federal government to administer this very program for the benefit of blind vendors who don't have the money to fight the state of Oklahoma on a regular basis. And is it your position by taking the $80 million that they've waived sovereign immunity? I do believe that. I believe, one, I believe by the fact that they participated in the program under the Randolph-Shepard Act, they have agreed to the arbitration. I find it meaningful, and maybe not wavering explicitly, that they get all this money, and yet they don't want to abide by the very act by which the money is given to them. Well, why can't we interpret the powers of the arbitration panel to be limited to declaratory and injunctive relief and not include damages, and still give a way to enforce the act? That would both recognize sovereign immunity and also have a meaningful remedy for the arbitration panel. Well, my problem with that, Your Honor, is this. Mr. Brown was found to have tax violations, tax liens, at the very time that he applied for this. Under Oklahoma law, under the Oklahoma statute, under the Randolph-Shepard Act, what Oklahoma adopted to administer the act, he was ineligible. He was void. His selection was void ad initio. Yet, if we don't award any damages, Mr. Brown sat down there for three years and made $4 million at Fort Sill. It just doesn't seem just to me that if we just say, all we're going to do is give you declaratory and injunctive relief, the state of Oklahoma, whenever it gets around to it, and after it's gone through every appeal process it can, maybe we'll let you back in. But that sounds like more of an objection to the concept of sovereign immunity than to anything else. And you can legitimately have some concerns about the concept of governmental immunity. But it is the law, right? Certainly, Your Honor, sovereign immunity is, under the 11th Amendment, applies in very many places. I don't believe it applies here, and I believe that other circuits have found similarly. I see that my time is up. If you're a little over, I'm interested in asking Ms. Sula a question. Do we have anything else for counsel? Thank you. Your Honor, the government in this case, in all these cases, is just a nominal party. And so what we do at the district court level is we file the administrative record and we back off. We don't own the records. You may not then be able to answer this question, but I'm going to ask it just in case. Sure. What is the Department's position on whether the Randolph-Shepard Act authorizes an arbitration panel to award damages? And that is one question we have not addressed, and I have addressed this with the Department of Education, and they do not have a response to that question. They don't have a response or they don't have a position? They don't have a position, I'm sorry, Your Honor. Even though, as your colleague indicated, there seem to be awards announced in the Federal Register on a regular basis? Yes, Your Honor. And again, these cases are argued by the parties in interest, and the Department of Education is setting up the arbitrators and files the administrative record and then backs away from the case. So what's the Department's status in this case? Isn't it an intervening party? It's actually not. It's the nominal party. It's the party market. The nominal party. It's a nominal party, and it allows for the jurisdiction of the court, but the intervener is actually Mr. Allstadt. So I apologize to the court that I don't have the answers that you're requesting. Well, we could only hope. Do you have anything else? No, Your Honor. Thank you. Counsel, you have some time. Thank you, Your Honor. Maybe because of the extra, but didn't he reserve some too? He's right. Okay. Your Honor, real briefly, some factual things. The $80 million is a number that just comes out of some place that has nothing to do with reality, and that was the factual problem at the hearing. This case started because Mr. Allstadt said that the recommendation panel had not correctly looked at the criteria. One of the criteria wasn't present. It hadn't been created. An administrative law judge held that that criteria should have been examined. Oklahoma went back, put the criteria in there. There was nothing for the recommendation panel to do. It was a set of numbers. They added those numbers, and Mr. Brown was still the person they recommended. After that, Mr. Allstadt complained again and said, well, Mr. Brown hadn't paid his taxes, and he was friends with one of the people on that recommendation committee. What we point out in the brief is that it is the Army who said, if you're delinquent on your taxes, as defined in the FARS, then you can't run this contract. We're not going to let you run this contract. Oklahoma informed all of its managers of that. It didn't make a determination. It said, look, if you're delinquent on your taxes, you can't run this contract. The Army allowed Mr. Brown to run the contract, so evidently they decided, under whatever meaning they have of delinquency on taxes, that he was not delinquent on his taxes. And as to the friends argument, that has also been mischaracterized. What difference does that make? It makes no difference. Well, no, on the taxes, that the Army, maybe the Army addressed it, maybe it didn't. We don't know. But the panel thought that he was delinquent, didn't it? Yes, the panel made their decision that the Army would have. We're not reviewing something the Army may or may not have decided. We're reviewing something else. Well, in a way, you are, Your Honor, because the panel... Well, where did the Army make a specific determination that he was not delinquent? When they said, if you are, you will not be allowed to operate the contract. No, that's the standard. Yes. But they've never taken a formal position about tax delinquency. If we assume that they were derelict in their duty, you are correct. I was assuming that they weren't, and that the fact that they said... I'm assuming that they did what they said they would do. No, I didn't... I'm just saying, there's no formal ruling by the Army. There is no formal ruling. Okay. Did the ODRS waive sovereign immunity by not raising it in the panel proceeding, the arbitration panel proceeding? That's another mischaracterization. Well, that's why I'm asking, what's your answer to that? Because counsel made that argument. Look at the briefing. Yes, it was raised. It was raised repeatedly, yes. We can see that in the... You can see it in the plea. So that's our position on that. And then the last thing, because I see my time is up. Go ahead and finish your point. And that is, you had asked me about the analysis of federal maritime. The Wisconsin Department of Workforce Division versus U.S. Department of Education case, which we cite, went through that analysis and specifically found just what I argued, and that is early rescissions like PRIMO. I understand, counsel. It's just that it seems as if a Supreme Court case, as opposed to a district court in Wisconsin, would have been the better guide. I agree, yes. Thank you, counsel. Thank you. That will complete the argument in this case, which...